DAVIES, TURNER & COMPANY *v.* UNITED STATES (No. 4656)[1]

United States Court of Customs and Patent Appeals, November 7, 1951

[1] C. A. D. 466.

*Barnes, Richardson & Colburn* (Joseph Schwartz of counsel) for appellant.
*David N. Edelstein*, Assistant Attorney General (*Joseph F. Donohue* and *Alfred A. Taylor, Jr.*, special attorneys, of counsel), for the United States.

Before GARRETT, Chief Judge, and JACKSON, O'CONNELL, JOHNSON, and WORLEY, Associate Judges

JACKSON, Judge, delivered the opinion of the court:

The subject matter out of which the present controversy arose is certain cheesecloth which was entered by appellant at the Port of Chicago and classified by the collector under paragraph 1529 (a) of the Tariff Act of 1930 as "Hemp articles in part fringe," dutiable at 90 per centum ad valorem. The importer protested the classification, claiming the goods to be properly dutiable pursuant to paragraph 1023 of the Act as "a manufacture, wholly or in chief value, of vegetable fiber," at 40 per centum ad valorem. The case was tried in the United States Customs Court, Second Division, which rendered its judgment in accordance with its decision, Abstract 54384, overruling the protest. From that judgment this appeal was taken.

The involved paragraphs, as far as pertinent, read as follows:

Par. 1529. (a) Laces, lace fabrics, and lace articles, made by hand or on a lace, net, knitting, or braiding machine, and all fabrics and articles made on a lace or net machine, all the foregoing, plain or figured; lace window curtains, veils, veilings, flouncings, all-overs, neck rufflings, flutings, quillings, ruchings, tuckings, insertings, galloons, edgings, trimmings, fringes, gimps, and ornaments; * * * all the foregoing, and fabrics and articles wholly or in part thereof, finished or unfinished * * * by whatever name known, and to whatever use applied, and whether or not named, described, or provided for elsewhere in this Act, when composed wholly or in chief value of filaments, yarns, threads, beads, bugles, spangles, or rayon or other synthetic textile, 90 per centum ad valorem. * * *

Par. 1023. All manufactures, wholly or in chief value of vegetable fiber, except cotton, not specially provided for, 40 per centum ad valorem.

One witness testified for appellant and exhibits were received in evidence, including samples of the imported merchandise, a magazine illustration depicting the use thereof, and an illustrative exhibit for the purpose of showing how the merchandise appears as it comes from the loom and before it is cut at predetermined spaces. No evidence was offered by the Government.

It appears that the cheesecloth is woven in lengths as long as 90 feet and, at intervals, is cut to desired lengths. For the purpose of obtaining those lengths, which are the imported merchandise, some of the weft threads are omitted at predetermined intervals, leaving the longitudinal threads between the ends of the lengths. Subsequent to the weaving, the longitudinal threads are severed so that individual pieces are produced with relatively short threads protruding from the ends of the cut pieces. Along the width edges of the individual

pieces there is an extra binding thread for the purpose of strengthening the edges, and the protruding threads, after being cut, are knotted therewith at their bases. As a further reinforcement, for a distance of about one inch adjacent to the edges, the weft threads are reduced in size and woven much more closely to each other than in the remainder of the cloth.

It appears that the cheesecloth is used exclusively in the process of cheese-making, described as follows: Milk is cooked at certain temperatures, in large kettles, until a curd is formed. When the curd reaches its proper consistency, the cheesecloth is placed thereunder and the entire mass, said to weigh about 200 pounds, is lifted from the kettle within the cheesecloth and allowed to drain through the interstices of the cloth. The curd mass is subsequently put into forms.

The issue here is whether or not, in a tariff sense, the short threads along the width edges of the goods are within the common meaning of "fringe." It is contended by counsel for appellant that such threads cannot properly be called "fringe" because they are not ornamental. In support of that contention the case of *United States* v. *Hochschild, Kohn & Co.*, 31 C. C. P. A. (Customs) 98, C. A. D. 255, is cited. Counsel for the Government assert that the threads are ornamental and constitute a "fringe" within the meaning of paragraph 1529 (a).

The trial court, in its decision, concluded that the threads were properly classified as "fringe," seemingly relying on the definitions of that word as contained in Funk & Wagnalls New Standard Dictionary (1942), as follows:

fringe, vt. 1. To border or ornament with or as with a fringe or fringes.

fringe, n. 1. An ornamental border or trimming, of pendent cords, loose threads, or tassels. * * * 2. Any fringe-like or other border, edging, or margin; the outer or bounding portion; * * *;

and in Webster's Collegiate Dictionary (1948), as follows:

1. An edging or trimming made of projecting ends of a fabric, or of loose threads, or strips, twisted or plaited together at the top. 2. Something resembling a fringe; a border; a margin; * * *

We are convinced that the connecting threads are not ornamental and cannot, in a tariff sense, be properly considered as fringe within the common meaning of the term. The so-called "fringe" here involved results from the omission of some of the weft threads in the weaving of the cheesecloth and cutting the connecting threads to produce the individual sections. The reinforcement of the edges, as above mentioned, does not, in our opinion, constitute ornamentation. We do not believe that a piece of cheesecloth, manufactured for the lowly use of surrounding 200 pounds of curd as it is lifted from a kettle, should be considered ornamental simply because there is reinforcement at its edges for the purpose of strengthening the cloth.

We have heretofore held as settled law that the common meaning of tariff expressions should be determined as of the date of the enactment of the tariff act, *United States* v. *O. Brager-Larsen*, 36 C..C. P. A. (Customs) 1, C. A. D. 388, and while it is trite to state that such meaning is solely a matter of law, the courts may, in arriving at the common meaning, consult the lexicographers.

The following dictionary definitions of the term "fringe," most of which were published prior to the effective date of the involved tariff act, are quoted in the brief of counsel for appellant:

*Century Dictionary & Cyclopedia (1911)*  *  *  *
1. An ornamental bordering formed of short lengths of thread, whether loose or twisted, or of twisted cord more or less fine, variously arranged or combined, projecting from the edge of the material orramented.—Fringe may consist of the frayed or raveled edge of the piece of stuff ornamented, but is generally of other material, often made very solid and ponderous, the cords being of tightly twisted silk or of gold or silver thread of considerable thickness and length.

*Webster's New International Dictionary (1920)*  *  *  *
1. An ornamental border or material for borders consisting sometimes of projecting ends of a fabric twisted or plaited together, and sometimes of loose threads of wool, silk, or linen, or strips of leather, or the like, attached to a band of the same material.

*Webster's New International Dictionary (1928)*  *  *  *
1. An ornamental border or material for borders consisting sometimes of projecting ends of a fabric twisted or plaited together, and sometimes of loose threads of wool, silk, or linen, or strips of leather, or the like, attached to a band of the same material.

*The New Century Dictionary (1929)*  *  *  * An ornamental bordering having projecting lengths of thread, cord, etc., either loose or variously arranged or combined; also, anything resembling or suggesting this (as, a *fringe* of hair over the forehead; a *fringe* of trees about a field); a border or margin.

*Funk & Wagnalls New Standard Dictionary (1931)*
1. An ornamental border or trimming of pendent cords, loose threads, or tassels.

*Webster's New International Dictionary (1934)*
1. An ornamental border or material for borders consisting of projecting ends of a fabric twisted or plaited together, or of loose threads of wool, silk, linen or strips of leather, etc., on a band of the same material.

*Funk & Wagnalls Standard Dictionary (1941).* An ornamental border or trimming of pendent cords, loose threads, or tassels.

It seems to us that those definitions clearly indicate that the term "fringe" as used in the involved act carries with it the quality of being ornamental. Even though an article may be incidentally ornamental, if its primary purpose is utilitarian, it may not properly be considered as ornamental. *Paramount Bead Corp., Walter A. Yokel* v. *United States*, 19 C. C. P. A. (Customs) 385, T. D. 45522. There can be no question but that the primary purpose of the involved merchandise is utilitarian.

An examination of paragraph 1529 (a) carries conviction to our minds that all of the articles *eo nomine* set out are ornamental and for

the embellishment of the person or the house. Surely, it cannot be that the coarse cheesecloth lengths out of which the issue here arises can be sensibly classed with the articles named in that paragraph.

In our opinion, the definitions of the term "fringe" in all the dictionaries, even those of late date which are quoted in the decision of the trial court, sustain our conviction.

It is true, of course, that broadly speaking a bald-headed man may be said to have a *fringe* of hair and the hair-line mustache cultivated by so many of our young men is many times called a *fringe*. We speak of *fringes* of trees, of shrubbery, and of hedges, and the like, but all such uses of the term, in our opinion, are far removed from the meaning of the term as intended by Congress and contained in the tariff act.

We are thoroughly convinced that under the common meaning of the term "fringe" the imported merchandise is properly classifiable as claimed by appellant, and, accordingly, for the reasons hereinbefore set out the judgment of the United States Customs Court is *reversed* and the case *remanded* for further proceedings consistent with what has been said in this opinion.